## Case No. 16,357.

### UNITED STATES v. SOTO et al.

[1 Hoff. Land Cas. 182.] 1

District Court, N. D. California. Dec. Term, 1856.

MEXICAN LAND GRANT — LOCATION OF BOUNDARY — EQUITABLE RIGHTS.

[1. The description in a grant called for "a straight line drawn to the beach, and from that point" another line. *Held*, that the word "point" did not mean a mathematical point, but that, in view of the character and circumstances of the grant, it must refer to the beach as being one of the boundaries.]

[2. Where it appears that the governor intended to accede to the petition, and the land has been long occupied and enjoyed under the grant or promise to grant, and by everybody recognized as belonging to the grantee, the latter has an equitable title which the United States should respect.]

Claim [of Barbara Soto] for one league and a half of land [constituting the Rancho San Lorenzo] in Contra Costa (now Alameda) county, confirmed by the board, and appealed by the United States.

William Blanding, U. S. Atty.
Thornton & Williams, for appellees.

HOFFMAN, District Judge. The claim in this case is founded on two grants,—one by Alvarado dated October 10, 1842, and the other by Micheltorena dated January 20, 1844, for the sobrante of half a league contained within the boundaries of the first. The land was described in the first grant as follows: "One league, a little more or less, in the tract called 'San Lorenzo,' the limits of which are from the creek of that name to that called 'El Alto,' pertaining to Don Jesus Vallejo, and from this creek, drawing a right

1 [Reported by Numa Hubert, Esq., and here reprinted by permission.]

line to pass by the rodeo, to the beach, and from this point to the first ridge which the hills form, excepting the number of varas which have been conceded in said tract to Don Guillermo Castro, which shall be determined at the time of the possession."

At the time the grant issued, Castro was owner of a tract of six hundred varas square, upon which he resided. He, in October, 1843, obtained a concession of a larger tract, which was described as bounded by the rancho of [Barbara] Soto on the side next the main road, it being considered that there has already been made a concession to the said Soto on the side towards the beach. The main road alluded to crosses the tract from creek to creek, and it was contended by Castro that the main road was the western boundary of his land, and that the grant to him was a virtual settlement of the line between him and Soto, which in the grant to the latter had been left for subsequent adjustment. Proceedings were instituted to settle this dispute, and it was finally determined by a compromise made with the approval of the governor. The line as thus settled was described in a document drawn up for the purpose, which appears in the archives, and a copy of which is endorsed on both expedientes. The boundary of Castro as thus settled is as follows: "Commencing on the sanjon (or ditch) where it is parallel with the southern side of Castro's house, and down the sanjon towards the main road six hundred varas, from which point, where they conclude, by a straight line to the San Lorenzo creek. The boundary on the other side of the sanjon is the margin (orilla) of the hills towards the plain, measuring ten varas up on the hills."

These proceedings must be taken as a final and definite settlement of the eastern line of Soto's ranch, and as such it was acquiesced in and recognized by the parties. The line thus designated can, as appears from the proofs, be readily located, and the testimony of the neighbors, particularly that of Guillermo Castro, shows that the location as determined from the description in the agreement in no respect differs from the line as understood and recognized by the parties themselves and neighboring rancheros. On the 20th of January, 1844, Soto addressed a petition to the governor, setting forth that the concession of the tract which he occupies, called "San Lorenzo," expresses to have an extension of one sitio (square league) a little more or less; that the overplus which it may have towards the beach may be half a sitio, which he begs may be conceded to him, as united with the other it would be of much benefit to him. On this petition the secretary reports that there is no objection to granting it, but that the petitioner must subject himself to the limits which his first title calls for, and to the agreement celebrated with Don Carlos Castro. On receiving this report the governor acceded to the

petition in the following words: "In conformity with the foregoing, Micheltorena."

It is objected that this was not a valid grant of the sobrante or overplus. But in the first place, it appears from the archives that the same formalities were rarely if ever observed in relinquishing a sobrante to the grantee, within the general limits of whose grant it was found, as were deemed necessary in making an original concession, or a grant of a sobrante to a stranger. The grant of the sobrante to him within whose limits it was found, was little more than a waiver or release of the condition of the original grant, which restricted him to a specific quantity, and the original grant (that condition being struck out) would by its terms convey the whole land within the limits designated. At all events, there can be no doubt in this case that the governor intended to accede to the petition, and the land having under this grant, or promise to grant, been long occupied and enjoyed, and on all hands recognized as belonging to the grantee, the latter has in any view an equitable right which the United States are bound to respect.

The important question, however, in the case, is as to the location of the southern boundary. The tract included within the original limits is claimed by the appellees to be in the form of a square or parallelogram, and bounded on the east by the line between Castro and Soto as it was fixed by the agreement heretofore alluded to, on the south by the Alto and a line through the rodeo to the beach, on the west by the beach, and on the north by the San Lorenzo. It is contended on the part of the United States, that neither the San Lorenzo nor the beach is a boundary of the tract, but that the southern line must be run from the point where the rodeo line or northern boundary strikes the beach, to the first ridge which the hills form. If such a line be drawn, it would form a diagonal to the square claimed by the appellees, and the tract would have a triangular shape, with the agreed line between Soto and Castro as its base on the east, and with its apex touching the beach at a mathematical point.

The language of the grant has already been quoted. The words which it is contended call for this location, are as follows: "And from this creek (El Alto) drawing a right line to pass by the rodeo to the beach, and from this point to the first ridge which the hills form, excepting," etc. It is claimed, and with much apparent reason, that the last line must be drawn from the "point" where the rodeo here strikes the beach to the first cuchilla or ridge. If the word "punta" had precisely the signification of the English word "point," as used in surveying, or if the grant had specified the "point" where the rodeo line strikes the beach as the point from which a straight line was to be drawn to the cuchilla for the southern boundary, the construction contended for

would be unavoidable. But the language is "a straight line drawn to the beach, and from that point," etc. It does not in terms say "and from the point where said line strikes the beach;" it merely says "from that point," namely, from the beach. A reference to the beach generally by the term "punta," is certainly not in accordance with our use of language; but so far as I have been able to discover, such a construction of the term is not inadmissible in Spanish. If, however, there were no other guide to the intentions of the grantor, this construction might probably be deemed forced and unnatural. There are other considerations, however, which I think remove any reasonable doubt as to its propriety.

In fixing the limits of land to be granted, both the law and usage of the Californians require them to adopt as nearly as possible a rectangular or square figure. This was not in all cases practicable, but in a country used almost exclusively for grazing, and where no fences were built, it became necessary to designate great natural objects as the boundaries of the tracts conceded. It seems therefore extremely improbable that in this instance the natural and obvious boundary afforded by the shore of a great estuary should be wholly neglected, and the land should assume the form of a triangle, having only a mathematical point at its apex resting on the beach, while one of the sides should diagonally cross the center of a large plain with no visible object throughout its length, except at its extremities, to determine its location. This is the more improbable as the whole of the neighboring land had been before, or was subsequently, granted, and the piece of land excluded by the diagonal line alluded to, if not embraced within the grant to Soto, has remained from some unexplained reason the only piece of ungranted land in the vicinity. The original grant to Soto was for one league within the limits specified. He subsequently, as we have seen, obtained the sobrante of about half a league more. This was after the boundary between him and Castro had been fixed.

Taking, then, that boundary as determined, there is found within the limits as claimed by him about one square league and a half, precisely the quantity granted to him in the two grants. But if the diagonal line be drawn as proposed, he would have but about two-thirds of a league in all, leaving his sobrante grant wholly inoperative, for even his first grant of one league could not be satisfied out of the tract so limited. It is to be borne in mind that Soto did not petition for an augmentation or extension, but for a sobrante or overplus—the excess within the original boundaries over and above the quantity to which he was restricted. This excess he states to be about half a league, while he also mentions that his first grant was for one league. If then the limits of the land as designated in his grant, after the Castro line was fixed, included less than a league as is now contended, the petition for a sobrante of half a league more within those limits was absurd. Had he or the governor supposed that the quantity already granted could not be found within the limits of the tract, it is not to be supposed that one would have asked for and the other conceded half a league more within those limits. In such case he would have asked for, not a sobrante, but an augmentation, and would have obtained his additional quantity outside of and beyond his original boundaries. The fact that the land, according to the boundaries he contends for, is nearly exactly the quantity (one league and a half) granted to him, seems to me almost conclusive as to what he intended to ask for and the governor to give.

The value of land to the former inhabitants of this country in a great degree depended upon the existence of abundant supplies of fresh water, or "agua dolce," for cattle. The line proposed would not only form an acute angle at the beach, but would touch the San Lorenzo creek only at a single mathematical point, thus cutting off all access to that stream, and either depriving the rancho altogether of fresh water, or else affording it at the El Alto alone for a short distance. The adjoining rancho at the south is bounded by the San Lorenzo, and it is improbable that in fixing the limits of a cattle rancho access to that stream should have been denied to Soto, when the land between his rancho and it was unoccupied and ungranted, and the governor was willing on his mere suggestion to increase the quantity given him by an additional half league. If with these considerations in our mind we recur to the grant, its intention seems obvious. It does not profess to give the boundary lines except on one side of the tract, but "its limits." Its longitudinal limits are declared to be from the San Lorenzo to the Alto, and the rodeo line to the beach. Having thus determined its length, the grantor indicates its breadth, viz. from the beach to the first crest of the hills.

He does not mention any point in the crest of the hills, which would have been natural if he had intended to fix as a southern boundary an imaginary straight line drawn from the point where the rodeo line struck the beach to the crest; and the indefiniteness of this description, referring as it does to a line on the summit of a range of hills. rather than to a point on those hills, seems to show that the intention of the grantor was merely to fix the latitudinal limits of the tract, viz: the beach and the crest; rather than to describe a line as a precise boundary. But all doubt on this subject is removed, if the diseño produced be received as the original on which the grant was made. It is shown beyond any reasonable doubt, that it was with the other title papers placed in the hands of eminent counsel in this city. in whose custody it has ever since remained.

By some oversight it was not put in evidence before the board, but A. M. Pico, Francisco Arce and G. Castro testify that it is either the identical map, or one exactly resembling that, which was handed to Pico when about to give judicial possession to Soto. This map is unusually rude, but the form of the tract is sufficiently indicated to show it to be a square or parallelogram, with the beach as its western boundary.

A further confirmation of these views is found in the report of Jimeno at the time of the dispute between the governor and Castro. "It appears to him," he says "convenient to measure to Soto the league, more or less, which has been granted him from the beach to the 'lomas,' or hills, but always on the side of· the Arroyo del Alto, because those are the limits which have been marked out, and from these limits he should follow those of Don G. Castro." He was thus, according to Jimeno, to have a league on the side of the Alto, from the beach to the hill and from the Alto to the San Lorenzo, following Castro's boundary. The sobrante, after measuring the league, would have lain between the beach and the San Lorenzo, and would have been, as the testimony shows, about half a league in extent if measured after the Castro line was determined, and it was precisely this sobrante of half a league which Soto asked for and obtained.

If to all this be added the fact that Soto himself always claimed, and was regarded by his neighbors as owning, the whole tract between the beach and the Castro line, and between the Alto and rodeo line and the San Lorenzo, the conclusion is irresistible that such are the true boundaries of the grant. The board ·confirmed the claim to the land within these boundaries, and I see no reason to reverse their decree.

[This case was afterwards heard on objections to the survey. See Case No. 16, 354.]

UNITED STATES v. SOTO. See Case No. 16,-156.